PER CURIAM.
This matter is before the Court on Respondent’s Petition for Leave to Resign, pursuant to Article XI, Rule 11.08 of the Integration Rule of The Florida Bar. The Florida Bar filed its response stating:
1. Pursuant to a finding of probable cause, a formal Complaint was filed against the respondent/petitioner on October 5, 1979. That Complaint charged violations of Disciplinary Rules 1— 102(A)(4), 1-102(A)(5), 1-102(A)(6), 7-102(A)(6), 7-102(A)(8), 9-102(B)(l) and 9-102(B)(3) of The Florida Bar’s Code of Professional Responsibility, and violations of Rules 11.02(3)(a) and 11.02(4) of Article XI of The Integration Rule of The Florida Bar;
*554 2. Subsequent to the filing of the Complaint, Mr. Willingham submitted the Petition To Resign dated March 6, 1980, which was filed in the court on March 27, 1980. He summarized the main case which gave rise to the Bar’s formal Complaint in paragraph 5. He was retained by Mr. William D. Acreman and paid $500 to institute a bankruptcy action in late 1977. Among Mr. Acreman’s assets was a house and lot in Haines City which he desired to retain and which respondent/petitioner advised him to sell to satisfy pressing creditors. In June, 1978, Mr. Willingham negotiated a sale of the property to a third party without the knowledge or consent of his client. He received the money without advising his client and he signed his client’s name to the Warranty Deed and some affidavits, also without his knowledge and consent. Thereafter, Mr. Willingham attempted to satisfy various liens outstanding against his client. When the sale became known, Mr. Acreman’s son-in-law, Mr. Williams, attempted to purchase “back” the property. Ultimately, $16,500 was deemed necessary to satisfy the existing creditors and the third party purchaser. Title to the property remained clouded due to respondent’s inability to satisfy various other liens and tax problems. Although he initially received the $6,700 in trust, he did not use this money to satisfy the outstanding judgments and liens. In one instance, a lien by the Cress Chemical Company for $3,670.10 was satisfied by $2,500 in cash and his own personal note for the remainder. The funds came not from his trust account. Additionally, he improperly prepared other affidavits in attempts to help Mr. Williams secure homestead exemption and clear other problems. As noted, the Bar charged the foregoing violated the rules as cited in paragraph one above;
3. Several other complaints were pending the Tenth Judicial Circuit Grievance Committee at the time this was received. He has listed these in his petition.
(a) 1079019 — In this case, he failed to secure a final judgment of dissolution of marriage for a Mrs. Townsend for almost two years after the final hearing. Ultimately, she received a final judgment dating back to the original date of the hearing through different counsel.
(b) 1079022 — This matter involves respondent’s handling of a business transaction where he sold the complainants’ truck for $2,500 plus an additional $1,500 to be obtained from operating revenues. They complained he manipulated the lease which rendered them unable to generate any revenue and also failed to account for earnings. It should be noted they used respondent’s services for various purposes over several years.
(c) 1079023 — This complaint, involving respondent’s negotiation of a property sale for approximately $4,000 for his client and his apparent failure to account, has been withdrawn.
Three other complaints not listed but pending include:
(d) 1080C15 — This involves a complaint by The Exchange Bank of Winter Haven which had forwarded payment for title insurance it ordered in 1977 to Mr. Willingham who apparently failed to pay the abstract company.
(e) 1080C50 — In this case Mr. Scott complains he paid Mr. Willingham $50 to accomplish some trade name research which he failed to do. After apparently promising a refund, Mr. Willingham has apparently failed to do it.
(f) 1080C52 — In this matter, Mr. Will-ingham was retained in 1974 by Mr. Waters to complete his property purchase and paid $125.00. After several payments, in October, 1978, Mr. Waters gave respondent $1,800 to complete the purchase. He also gave him an additional $150 in April, 1979, apparently for filing and other fees. Both checks were cashed by Mr. Willingham. However, the deed and mortgage were never recorded and the record title re *555 mained in the seller whose whereabouts remains unknown. Mr. Waters additionally had retained Mr. Willingham to represent him in an independent dispute over monies he owed to a Jacksonville firm in 1978. He paid him a total of $850 for fees and settlement. Payment was never received by the Jacksonville firm although respondent cashed the checks. Finally, Mr. Waters paid Mr. Willingham $50 to represent his son on a traffic violation. He thereafter failed to appear in the matter or return any money.
Paragraph 9 of respondent’s petition lists another complaint:
(g) — William T. Hall complained about respondent’s failure to accomplish a name change which was then dropped when the fee was refunded. This was never formally brought to the attention of the Grievance Committee.
All of the above-mentioned cases will be dismissed if this court grants respondent’s Petition For Leave To Resign;
4. At its May, 1980 meeting, the Board of Governors voted to support the Petition For Resignation with the following provisos:
(a) The Judgment granting leave to resign be a public order to be published in The Southern Reporter setting forth the general matters which led to the resignation, pursuant to Fla.Bar In-tegr.Rule Article XI, Rules 11.08(3) and 11.12(2);
(b) Tax such known costs against the respondent currently amounting to $704.32; and
(c) Order restitution to any clients where now known or as may be discovered in the future prior to any reinstatement following proof of rehabilitation in a regular reinstatement proceeding pursuant to Florida Bar Integration Rule Article XI, Rule 11.11;
5. The Bar submits that an appropriate judgment granting leave to resign, including the above conditions, will fulfill the criteria for such resignations pursuant to Fla.Bar Integr.Rule Art. XI, Rule 11.08(3). The public interest will not be adversely affected by granting the petition for leave to resign. The foregoing matters indicate it is clearly in the public interest to remove the respondent from the practice of law. That interest will further be served by publication of a public order detailing the general nature of events leading to the resignation. Such publication can only enhance the confidence of the public in the legal profession and the discipline program. Additionally, granting The Petition For Leave To Resign will not adversely effect the purity of the courts nor hinder the administration of justice. Conversely, The Bar submits it will work to the opposite effect. The allegations charged in the formal complaint and raised by the other matters, indicate that granting his Petition to Resign, which precludes the respondent/petitioner from reapplying for a minimum of three years [is] in the interest of all concerned.
The Court having reviewed the Petition for Leave to Resign and Response by The Florida Bar and determined that the requirements of Rule 11.08(3) are fully satisfied, the Petition for Leave to Resign is hereby approved, effective immediately.
The respondent, Dale B. Willingham, is hereby directed to make restitution to all injured parties as now exist or may be discovered in the future and to pay the costs of these proceedings in the amount of $704.32. Prior to filing a Petition for Reinstatement pursuant to Florida Bar Integration Rule, Article XI, Rule 11.11, respondent shall demonstrate that he has paid the costs of all prior proceedings and has made restitution to all injured parties now known or discovered prior to the filing of such Application for Reinstatement.
It is so ordered.
SUNDBERG, C. J., and BOYD, OVER-TON, ALDERMAN and McDONALD, JJ., concur.